# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3484

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Curtis Barfield, | * | District of Missouri. |
| | * | |
| Appellant. | * | [UNPUBLISHED] |

_____

Submitted: November 17, 2005
Filed: February 8, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

PER CURIAM.

Curtis Barfield appeals his conviction for conspiracy to murder a federal witness, *see* 18 U.S.C. §§ 1111, 371, contending that the evidence was insufficient. We affirm the judgment of the district court.[1]

Mr. Barfield was convicted of conspiracy to murder a federal witness based on his involvement in the death of Jovan Ross. Ms. Ross told police that her boyfriend, Xavier Lightfoot, had participated in several robberies and that the residence where

_____

[1]The Honorable Fernando J. Gaitano, Jr., United States District Judge for the Western District of Missouri.

they lived contained proceeds of those robberies. After investigating, police and FBI agents executed a search warrant on the residence and seized cash boxes, travelers' checks, money wrappers, cash bags, dark clothing, and weapons. Mr. Lightfoot was charged with robbery, and during discovery in his case the government produced documents indicating that Ms. Ross was going to be the primary prosecution witness at Mr. Lightfoot's trial. She was murdered just before that trial was to have begun.

According to testimony at Mr. Barfield's trial, while Mr. Lightfoot was incarcerated he talked with Cornelius Peoples, who had also participated in the robberies. They discussed finding someone to kill Ms. Ross before she could testify at Mr. Lightfoot's trial or incriminate anyone else involved in the robberies. According to Anthony Hunter's testimony, when Mr. Peoples contacted him for this purpose Mr. Hunter said that he was not interested in killing Ms. Ross himself, but he called Mr. Barfield to ask for assistance in finding a killer. Mr. Hunter testified that Mr. Barfield agreed to help in exchange for part of the money that Mr. Peoples had promised to pay Mr. Hunter and that Mr. Barfield then recruited Carl Haskell to shoot Ms. Ross. According to Mr. Hunter, Mr. Peoples and Larry Platt drove Mr. Barfield and him to Ms. Ross's home and work locations, with the understanding that Mr. Barfield was to pass on the information to Mr. Haskell. (Although Mr. Platt testified, he did not mention accompanying Mr. Hunter on this trip.) Mr. Hunter also testified that he and Mr. Barfield provided the car that the killer used and that after the shooting he brought Mr. Haskell and Mr. Barfield to meet with Mr. Peoples to confirm that the deed had been done.

According to the testimony of Quinton Jones, an intimate of Mr. Haskell's, Mr. Barfield met Mr. Haskell at a house in Kansas City, Kansas, where Mr. Haskell and Mr. Jones were staying. Mr. Jones testified that after a brief discussion with Mr. Haskell, Mr. Barfield left, and Mr. Haskell asked Mr. Jones to drive him to Missouri. Mr. Jones further testified that they departed in a car that Mr. Jones later discovered had been procured from Mr. Barfield. Upon arriving at Ms. Ross's

residence, according to Mr. Jones, Mr. Haskell kicked in the door and shot the occupant while Mr. Jones stood by. Mr. Jones stated that he understood that the gun used on Ms. Ross had come from Mr. Barfield.

Clarence Burnett also testified against Mr. Barfield at his trial. Mr. Burnett said that he met Mr. Barfield in a federal detention facility before Mr. Barfield's trial for the murder of Ms. Ross, and that Mr. Barfield had said that he and Mr. Hunter had organized a hit on a witness against Mr. Lightfoot. Mr. Burnett also testified that Mr. Barfield described casing the witness's home and job site, complained to Mr. Burnett that he had not been paid for his role in the killing, and asked Mr. Burnett for his opinion on the evidence against him. Mr. Burnett further stated that he did not talk with Mr. Hunter, although Mr. Hunter testified to the contrary.

Mr. Barfield argues that the district court erred in denying his motions for judgment of acquittal. He contends that conflicts in the testimony of the three principal witnesses for the prosecution made the government's evidence insufficient to support the determination that Mr. Barfield knowingly contributed his efforts to further a conspiracy to murder Ms. Ross. The defendant argues that Mr. Platt's failure in his testimony to corroborate Mr. Hunter's testimony regarding the trip with Mr. Peoples and Mr. Barfield to scout out Ms. Ross's addresses undercuts the evidence that Mr. Barfield participated in an overt act in furtherance of the conspiracy. Mr. Barfield also points out that Mr. Hunter's testimony that he met Mr. Burnett in prison was arguably undermined by Mr. Burnett's testimony that he had not talked to Mr. Hunter. In addition, witnesses gave different theories on the fate of a pink box taken from Ms. Ross's residence: Mr. Jones testified that it had been thrown away en route from Ms. Ross's home; another witness, who met with Mr. Haskell and Mr. Jones after the shooting, testified that he had seen the box in their possession after they returned to Kansas.

We review the district court's denial of Mr. Barfield's motion for judgment of acquittal by considering the evidence in the light most favorable to the verdict, and will reverse only if no reasonable jury could have found him guilty beyond a reasonable doubt. *United States v. Pizano*, 421 F.3d 707, 721 (8th Cir. 2005), *petition for cert. filed*, No. 05-8684 (Jan. 11, 2006). To convict Mr. Barfield, the government needed to establish that a conspiracy existed, that Mr. Barfield knew of the conspiracy, and that he knowingly joined it. *See id.* at 719. An express agreement is not required for conviction; if the defendant has a tacit understanding with the other participants, that will suffice. The defendant, however, must cooperate in some way; mere knowledge of the conspiracy is not sufficient. *United States v. Crossland*, 301 F.3d 907, 913 (8th Cir. 2002).

Here, the conspiracy laid was an agreement to achieve the illegal purpose of murdering a federal witness. Mr. Hunter testified that he had worked jointly with Mr. Barfield to procure a killer for Mr. Peoples and that Mr. Barfield was to provide information on Ms. Ross's location to Mr. Haskell. Mr. Jones testified that Mr. Barfield had a private discussion with Mr. Haskell that immediately preceded Mr. Haskell's asking Mr. Jones for transportation to an address later revealed to be the home of Ms. Ross. The jury had the opportunity to assess the credibility of all this testimony and to determine whether the inconsistencies in the testimony were inconsequential or gave rise to reasonable doubts about Mr. Barfield's guilt. There was, moreover, considerable circumstantial evidence pointing to Mr. Barfield's involvement and participation in the conspiracy to murder Ms. Ross. The evidence in the record was more than sufficient to convict Mr. Barfield.

Affirmed.

_____